United States District Court
Southern District of Texas
**ENTERED**
June 07, 2024
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| Noe Armando Artiga, | § | |
| *Petitioner,* | § | |
| | § | |
| v. | § | Civil Action 4:16-CV-2219 |
| | § | |
| Bobby Lumpkin, | § | |
| Director, Texas Department | § | |
| of Criminal Justice, Correctional | § | |
| Institutions Division, | § | |
| *Respondent.* | § | |

## Memorandum and Recommendation

Noe Armando Artiga, a Texas state inmate, has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 to challenge his 2015 state-court conviction for murder. The respondent, Bobby Lumpkin, has moved for summary judgment. ECF No. 43. Artiga replied. ECF No. 44. The court recommends that the respondent's motion for summary judgment be **GRANTED** and that Artiga's petition be **DISMISSED** with prejudice.

*I.    Background*

Artiga is in custody of the Texas Department of Criminal Justice—Correctional Institutions Division (TDCJ) as the result of a state-court conviction for murder out of the 182nd District Court of Harris County, Texas (Cause No. 1333910). ECF No. 42-2 at 11–13. At the time of the offense, Artiga was a 16-year-old juvenile and a known member of the Mara Salvatrucha ("MS-13") gang. ECF No. 42-1 at 6, 8. Following a certification hearing, the juvenile court signed an order to waive jurisdiction and certified Artiga to

be tried as an adult. ECF No. 42-1 at 6–7; ECF No. 42-25 at 77–120.[1]

In March 2012, Artiga was indicted in the criminal district court for the murder of Jonathan Hernandez.[2] ECF No. 42-1 at 5. Artiga entered a plea of guilty without an agreed recommendation as to punishment. *Id.* at 20–22; ECF No. 42-2 at 1–5. On February 24, 2015, following a Presentence Investigation (PSI) Hearing, the trial court found Artiga guilty of the charged offense and sentenced him to a 50-year prison term. ECF No. 42-2 at 11–13. Artiga did not appeal the judgment of conviction and sentence.[3]

In July 2016, Artiga filed his first state application for writ of habeas corpus under Article 11.07 of the Texas Code of Criminal Procedure, collaterally challenging his conviction. ECF No. 42-25, *Ex parte Artiga,* Application No. WR-84,603-02. In November 2016, the Texas Court of Criminal Appeals dismissed the application without a written order. ECF No. 42-23.

While his first state writ application was still pending, Artiga filed the instant federal habeas petition, along with a "Motion for Leave to File Protective Petition and Stay and Abeyance to Exhaust State Court Remedies." ECF No. 1, 3. In July 2016, this court granted Artiga's motion and stayed these proceedings. ECF No. 12.

---

[1] Artiga included a copy of the transcript from his certification hearing as an exhibit to his first state habeas application. He asked the state habeas court to consider this exhibit when he filed his second state habeas application. ECF No. 80.

[2] Artiga was simultaneously certified as an adult and indicted for the separate murder of Anayanci Roche in Cause Number 1333991. In exchange for Artiga's guilty plea to the murder of Hernandez, the State agreed to dismiss the case for the murder of Roche. ECF No. 42-5 at 9; ECF No. 42-7 at 23; *see also* ECF No. 42-25.

[3] Artiga filed a *pro se* notice of appeal from the trial court's denial of his "Motion to be Provided/Furnished Free Copy of Court Reporter's Proceedings and Transcripts in Support of Filing a Writ of Habeas Corpus." The appeal was dismissed for lack of jurisdiction. *Artiga v. State,* No. 01-16-00363-CR, 2016 WL 6599638 (Tex. App.—Houston [1st Dist.] Nov. 8, 2016).

In December 2016, Artiga filed a second state writ application. ECF No. 42-47, *Ex parte Artiga*, Application No. WR-84,603-03. The trial court appointed counsel to represent Artiga during the state habeas proceedings and, ultimately, entered findings of fact and conclusions of law, recommending that relief be denied. ECF No. 42-44 at 43–58; ECF No. 42-47 at 139. In August 2021, the Court of Criminal Appeals denied Artiga's application without a written order. ECF No. 42-27.

Artiga now raises the following grounds for federal habeas relief:

- trial counsel rendered ineffective assistance by failing to advise Artiga in a timely manner that he had definitive grounds to overturn his conviction on direct appeal (Ground One);
- his guilty plea was unknowing and involuntary due to counsel's ineffective assistance (Ground Two); and
- trial counsel rendered ineffective assistance at sentencing by failing to present expert testimony as mitigating evidence (Ground Three).

ECF No. 1 at 6–7.

The respondent argues that Artiga's petition should be dismissed with prejudice because his claims are without merit. ECF No. 43.

II.    *The Summary-Judgment Standard*

Summary judgment is proper when the record shows no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In ordinary civil cases, a district court considering a motion for summary judgment must construe disputed facts in the light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his

favor."). "As a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force in the context of habeas corpus cases." *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000); *Anderson*, 477 U.S. at 254. The court applies general summary judgment standards to the extent they do not conflict with the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *See Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002) ("[Rule 56] applies only to the extent that it does not conflict with the habeas rules."), *abrogated on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004).

Artiga is representing himself. Self-represented habeas petitions are construed liberally and are not held to the same stringent and rigorous standards as pleadings lawyers file. *See Martin v. Maxey*, 98 F.3d 844, 847 n.4 (5th Cir. 1996); *Guidroz v. Lynaugh*, 852 F.2d 832, 834 (5th Cir. 1988). The court broadly interprets Artiga's state and federal habeas petitions. *Bledsue v. Johnson*, 188 F.3d 250, 255 (5th Cir. 1999).

III.  *Discussion*

A.  *Standard of Review under 28 U.S.C. § 2254(d)*

Under AEDPA, federal habeas relief cannot be granted on legal issues adjudicated on the merits in state court unless the state adjudication was contrary to clearly established federal law as determined by the Supreme Court or involved an unreasonable application of clearly established federal law as determined by the Supreme Court. *Harrington v. Richter*, 562 U.S. 86, 98–99 (2011); *Williams v. Taylor*, 529 U.S. 362, 404–05 (2000); 28 U.S.C. §§ 2254(d)(1), (2). A state court decision is contrary to federal precedent if it applies a rule that contradicts the governing law set forth by the Supreme Court, or if it confronts a set of facts that are materially indistinguishable from such a decision and arrives at a result different from the Supreme Court's precedent. *Early v. Packer*, 537 U.S. 3, 7–8 (2002).

A state court unreasonably applies Supreme Court precedent if it unreasonably applies the correct legal rule to the facts of a particular case, or unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. *Williams*, 529 U.S. at 409. In deciding whether a state court's application was unreasonable, this court considers whether the application was objectively unreasonable. *Id.* "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Richter*, 562 U.S. at 102. As stated by the Supreme Court in *Richter*,

> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal.

*Id.* at 102–03 (emphasis added; internal citations omitted).

AEDPA affords deference to a state court's resolution of factual issues. Under 28 U.S.C. § 2254(d)(2), a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless it is objectively unreasonable in light of the evidence presented in the state court proceeding. *Miller-El v. Cockrell*, 537 U.S. 322, 343 (2003). A federal habeas court must presume the underlying factual determination of the state court to be correct, unless the petitioner rebuts the presumption of correctness by clear and convincing

evidence. 28 U.S.C. § 2254(e)(1); *see also Miller-El*, 537 U.S. at 330–31. This presumption extends not only to express findings of fact, but to the implicit findings of the state court as well. *Garcia v. Quarterman*, 454 F.3d 441, 444 (5th Cir. 2006) (citations omitted).

Finally, when the Texas Court of Criminal Appeals denies a state habeas application without a written order, it is considered an adjudication on the merits of the claims that were presented in those proceedings. *See Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000) ("Under Texas law a denial of relief by the Court of Criminal Appeals serves as a denial of relief on the merits of the claim."). The deferential AEDPA standard of review applies even where the state court fails to cite applicable Supreme Court precedent or explain its decision. *See Early v. Packer*, 537 U.S. at 8–9 (2002); *see also Cullen v. Pinholster*, 563 U.S. 170, 187 (2011) ("Section 2254(d) applies even where there has been a summary denial."); *Richter*, 562 U.S. at 100 ("This Court now holds and reconfirms that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'"). Because a federal habeas corpus court only considers the reasonableness of the state court's ultimate decision, the AEDPA inquiry is not altered when the state court denies relief without a written opinion. *See Schaetzle v. Cockrell*, 343 F.3d 440, 443 (5th Cir. 2003). In such circumstances, a federal habeas corpus court: "(1) assumes that the state court applied the proper 'clearly established Federal law'; and (2) then determines whether its decision was 'contrary to' or 'an objectively unreasonable application of' that law." *Id.* (quoting 28 U.S.C. § 2254 (d)(1)-(2)).

B.    *Involuntary Guilty Plea*[4]

As a threshold matter, the court considers whether Artiga entered his guilty plea involuntarily. In his second ground for relief, Artiga alleges that his guilty plea was unknowing and involuntary due to trial counsel's ineffective assistance. ECF No. 1 at 6. He contends that counsel failed to properly investigate and file a motion to suppress his confession which was obtained improperly under Texas law. *Id.* Artiga argues that if he had known that his confession would have been suppressed, he would have insisted on going to trial. *Id.*

A federal court will uphold a guilty plea challenged in a habeas corpus proceeding if the plea was knowing, voluntary, and intelligent. *Hobbs v. Blackburn*, 752 F.2d 1079, 1081 (5th Cir. 1985), *cert. denied*, 474 U.S. 838 (1985). A guilty plea is invalid if the defendant does not understand the nature of the constitutional protection that he is waiving or if he has such an incomplete understanding of the charges against him that his plea cannot stand as an admission of guilt. *Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976). The critical issue in determining whether a plea is voluntary and intelligent is "whether the defendant understood the nature and substance of the charges against him, and not necessarily whether he understood their technical legal effect." *Taylor v. Whitley*, 933 F.2d 325, 329 (5th Cir. 1991), *cert. denied*, 503 U.S. 988 (1992). If the record shows that the defendant "understood the charge and its consequences," a federal habeas court will uphold a guilty plea as voluntary even if the trial judge

---

[4] The court notes that Artiga has filed a letter stating his intent to abandon this ground for relief as frivolous. ECF No. 45 at 1. Because the issue has been fully briefed, because the letter does not comply with Federal Rule of Civil Procedure 41, and because the Respondent seeks dismissal with prejudice, the court addresses this claim for relief on the merits.

failed to explain the offense. *Davis v. Butler*, 825 F.2d 892, 893 (5th Cir. 1987).

The record shows that Artiga appeared in open court and entered a plea of guilty. ECF No. 42-5 at 5. The court admonished Artiga that he was charged with the felony offense of murder and that the punishment range for the offense was between 5 to 99 years or life in prison. *Id.* at 6. Artiga stated on the record that he was entering his guilty plea freely and voluntarily and that nobody had forced, threatened, or coerced him into entering his plea. *Id.* Artiga also represented to the court that he was mentally competent and agreed to stipulate to the evidence. *Id.* at 7–8. Trial counsel affirmed his belief that Artiga was aware of the nature and consequences of pleading guilty. *Id.* at 7.

The record further shows that Artiga signed paperwork containing these plea admonishments. ECF No. 42-1 at 20–22; ECF No. 42-2 at 1. By signing the statements contained in the plea paperwork, Artiga again represented to the court that he was mentally competent, that he fully understood the nature of the charges against him and the consequences of his plea, and that he entered his plea freely and voluntarily. *Id.* at 22; ECF No. 42-2 at 1. Artiga also signed a document by which he waived his constitutional rights, agreed to stipulate to the facts and to his guilt, and made a confession. ECF No. 42-1 at 20–21. By his signature, Artiga attested to the truth of the allegations in the indictment and confessed that he had committed the offense. *Id.* These documents were all reviewed and signed by trial counsel, the prosecutor, and the trial court. Artiga also signed immigration admonishments which informed him of the potential consequences of pleading guilty, including removal from the United States.[5] ECF

---

[5] Artiga is a citizen of El Salvador. ECF No. 42-1 at 9.

No. 42-2 at 2–5. Finally, Artiga was advised of his right to appeal. *Id.* at 6–7.

These official court records "are entitled to a presumption of regularity and are accorded great evidentiary weight" on habeas corpus review. *Hobbs*, 752 F.2d at 1081–82 (citations omitted). Likewise, "[s]olemn declarations in open court carry a strong presumption of verity," forming a "formidable barrier in any subsequent collateral proceedings." *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998) (quoting *Blackledge v. Allison*, 432 U.S. 63, 73–74 (1977)); *see also United States v. Cothran*, 302 F.3d 279, 283–84 (5th Cir. 2002) ("Reviewing courts give great weight to the defendant's statements at the plea colloquy."); *DeVille v. Whitley*, 21 F.3d 654, 659 (5th Cir. 1994) ("Although their attestations to voluntariness are not an absolute bar to raising this claim, Appellants face a heavy burden in proving that they are entitled to relief because such testimony in open court carries a strong presumption of verity."). The state habeas court found that Artiga understood the nature of the charges against him as well as the consequences of pleading guilty. *See* Dkt. 42-44. These findings are entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1). *See Murphy v. Davis*, 901 F.3d 578, 595–97 (5th Cir. 2018) (a presumption of correctness attaches to a state trial court's factual findings unless the state appellate court explicitly rejects the findings or renders a decision that is directly inconsistent with the findings). Artiga fails to present, and the record fails to reveal, clear and convincing evidence to the contrary.

To the extent Artiga contends that trial counsel's failure to investigate and file a motion to suppress his confession rendered his guilty plea unknowing and involuntary, his claim is waived. A voluntary guilty plea waives non-jurisdictional defects preceding the plea. *See United States v. Daughenbaugh*, 549 F.3d 1010, 1012 (5th Cir. 2008); *Gardner v. Wainwright*, 433 F.2d 137, 139 (5th Cir.

1970) (citations omitted); *see also Tollett v. Henderson*, 411 U.S. 258, 267 (1973) ("When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."). This includes claims for ineffective assistance of counsel except insofar as the alleged ineffectiveness relates to the voluntariness of a guilty plea. *See Busby v. Holman*, 356 F.2d 75, 77–78 (5th Cir. 1966) (a voluntary plea of guilty on advice of counsel is not rendered invalid because the defendant had previously made a confession that would not have been admissible had he gone to trial). Because counsel's alleged failure to investigate and file a motion to suppress Artiga's confession did not interfere with Artiga's ability to understand the nature of the charges against him and the consequences of his plea, this claim is waived and cannot form a basis for federal habeas relief.

### C.     *Ineffective Assistance of Trial Counsel*

In his remaining grounds for relief, Artiga alleges that trial counsel rendered ineffective assistance when he: (1) failed to advise Artiga in a timely manner that he had definitive grounds to overturn his conviction on direct appeal; and (2) failed to present expert testimony as mitigating evidence at sentencing. ECF No. 1 at 6–7. Artiga's allegations are not supported by the record and fail to demonstrate an entitlement to relief. The state court rejected each of these claims, necessarily finding that Artiga failed to demonstrate that trial counsel rendered constitutionally ineffective assistance.

In *Hill v. Lockhart,* 474 U.S. 52 (1985), the Supreme Court held that the two-part test set out in *Strickland v. Washington,* 466 U.S. 668 (1984), applies to cases involving guilty pleas. A petitioner must show that: (1) his counsel's actions fell below an objective

standard of reasonableness; and (2) the ineffective assistance of counsel prejudiced him. *Id.*; *Moawad v. Anderson,* 143 F.3d 942, 946 (5th Cir. 1998). A court may resolve a claim by finding either that counsel was reasonably effective or that there was a lack of prejudice. There is no need to reach both issues if the defendant makes an insufficient showing on one. *Strickland,* 466 U.S. at 697.

In assessing the reasonableness of counsel's performance, the court strongly presumes that it falls within the "wide range of reasonable professional assistance" and that "the challenged action might be considered sound trial strategy." *Strickland,* 466 U.S. at 689; *Gray v. Lynn,* 6 F.3d 265, 268 (5th Cir. 1993). If counsel's action is based on well-informed strategic decisions, it is "well within the range of practical choices not to be second-guessed." *Rector v. Johnson,* 120 F.3d 551, 564 (1997) (quoting *Wilkerson v. Collins,* 950 F.2d 1054, 1065 (5th Cir. 1992), *cert. denied,* 509 U.S. 921 (1993)).

In the context of a guilty plea, prejudice is present if there is a reasonable probability that, but for counsel's errors, the defendant would not have pleaded guilty but would have proceeded to trial. *United States v. Payne,* 99 F.3d 1273, 1282 (5th Cir. 1996) (citing *Mangum v. Hargett,* 67 F.3d 80 (5th Cir. 1995), *cert. denied,* 516 U.S. 1133 (1996)). A reasonable probability is one that undermines confidence in the outcome. *Strickland,* 466 U.S. at 694.

Because Artiga pleaded guilty, the question is whether counsel's performance interfered with his ability to understand the nature of the charges against him and the consequences of his plea. Because the state court rejected Artiga's ineffective-assistance claims, the issue is not whether this court "'believes the state court's determination' under the *Strickland* standard 'was incorrect but whether the determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance,* 556 U.S.

11

111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 478 (2007)). "[B]ecause the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles*, 556 U.S. at 123 (citation omitted). A "doubly deferential" standard applies on federal habeas review. *Id.*; *see also Richter*, 562 U.S. at 105 (emphasizing that the standards created by *Strickland* and § 2254(d) are "highly deferential," and "'doubly' so" when applied in tandem) (citations and quotations omitted). The record fails to show that the state court's decision was unreasonable under the doubly deferential standard.

### 1. Failure to consult about appellate rights

Artiga first asserts that trial counsel rendered ineffective assistance when he failed to advise Artiga in a timely manner that he had definitive grounds to overturn his conviction on direct appeal. ECF No. 1 at 6. Artiga contends that the trial court never acquired jurisdiction over his case because the juvenile court's order to waive jurisdiction was defective and based on insufficient evidence, rendering both the transfer order and subsequent judgment of conviction void. *Id.* at 6; ECF No. 2 at 2–6. Artiga maintains that if trial counsel had informed him of these deficiencies in a timely manner, Artiga would have "unequivocally instructed" his attorney to file a notice of appeal. ECF No. 2 at 6. He now seeks an out-of-time appeal due to counsel's alleged failure to consult.

To prevail on a claim of ineffective assistance of counsel for failure to file a notice of appeal, a petitioner must show that counsel's failure to file a notice fell below an objective standard of reasonableness and that it prejudiced him. *See Roe v. Flores-Ortega*, 528 U.S. 470, 484 (2000). In *Flores-Ortega*, the Supreme Court held that an attorney's failure to file a notice of appeal requested by a defendant is *per se* ineffective assistance of counsel,

even without a showing that the appeal would have had merit. *Id.*
at 477. "For the same reason, a defendant who explicitly tells his
attorney not to file an appeal cannot later complain that his
counsel performed deficiently in failing to file a notice of appeal."
*Sanchez-Beltran v. United States*, Criminal Action No. L-07-932-1,
2009 WL 1754292, at *5 (S.D. Tex. June 19, 2009) (citing *Flores-Ortega*, 528 U.S. at 477). A petitioner must demonstrate by a
preponderance of the evidence that he requested an appeal to
establish ineffective assistance for failing to file a requested notice
of appeal. *United States v. Tapp*, 491 F.3d 263, 266 (5th Cir. 2007).

If the defendant has not told counsel whether he wants an
appeal filed, the issue becomes whether counsel consulted with the
defendant about an appeal. *Flores-Ortega*, 528 U.S. at 478. In this
context, "consult" means "advising the defendant about the
advantages and disadvantages of taking an appeal, and making a
reasonable effort to discover the defendant's wishes." *Id.* "If
counsel has consulted with the defendant, the question of deficient
performance is easily answered: Counsel performs in a
professionally unreasonable manner only by failing to follow the
defendant's express instructions with respect to an appeal." *Id.*
(citation omitted).

Where defense counsel has failed to consult with the
defendant about an appeal, courts must inquire whether counsel
was required to consult with his client. *Id.* at 479–80. The Supreme
Court has held that "counsel has a constitutionally imposed duty
to consult with the defendant about an appeal when there is reason
to think either (1) that a rational defendant would want to appeal
(for example, because there are nonfrivolous grounds for appeal),
or (2) that this particular defendant reasonably demonstrated to
counsel that he was interested in appealing." *Flores-Ortega*, 528
U.S. at 480. "In making this determination, courts must take into
account all the information counsel knew or should have known."

*Id.* (citation omitted). The court must also consider "whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings." *Id.* However, "[i]n cases when the defendant pleads guilty, the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights." *Id.* Finally, even if a defendant shows deficient performance, he must show prejudice by "[demonstrating] that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id.* at 484.

Here, Artiga admits that he never asked trial counsel to file a notice of appeal. Dkt. 2 at 6 (noting that because he "believed there were no viable grounds to appeal his conviction, making it a frivolous (sic) pursuit, he never instructed counsel to file a notice of appeal for him"). However, he contends that trial counsel failed to advise him in a timely manner that he had two non-frivolous grounds for overturning his conviction on direct appeal: (1) the juvenile court's transfer order was defective because it incorrectly stated that Artiga waived his right to a hearing and agreed to the waiver of jurisdiction;[6] and (2) there was insufficient evidence to

---

[6] The January 18, 2012 transfer order states that Artiga "waived a hearing in the above styled and number cause under Section 54.02 of the Family Code, on the issue of waiver of jurisdiction and agreed to the waiver of jurisdiction." ECF No. 42-1 at 6. The record clearly shows that Artiga had a certification hearing, where he was represented by counsel and afforded the opportunity to contest the waiver of jurisdiction. *See* ECF No. 42-25 at 77–120; ECF No. 42-47 at 59–60. Both Artiga's counsel from the juvenile court proceedings and the State noted that any language to the contrary in the January 18 order was the result of a clerical mistake. ECF No. 42-44 at 47; ECF No. 42-47 at 59–60. The record reflects that an amended order to waive jurisdiction was signed by the court on April 4, 2012. *See* ECF No. 42-7 at 23, PSI Report (recognizing amended order); *see also* ECF No. 42-44 at 47, State's Proposed Findings of Fact, Conclusions of Law and Order ("Applicant's claim that the order

support the transfer order because the order did not contain detailed fact findings in support of transfer, as required by *Moon v. State*, 451 S.W.3d 28 (Tex. Crim. App. 2014).[7] ECF No. 1 at 6; ECF No. 2 at 2–6. As a result of these underlying errors, Artiga contends that the juvenile court's waiver of jurisdiction was invalid; thus, the criminal district court never acquired jurisdiction, and his judgment of conviction is void. *Id.* Contrary to Artiga's allegations, the record shows that counsel consulted with Artiga as to whether he should file a direct appeal.

During the state habeas proceedings, trial counsel submitted an amended affidavit attesting to Artiga's right of appeal and addressing Artiga's allegations, stating in relevant part:

> [Artiga's] plea of guilty documents, entered on May 2, 2014, indicate that the plea was without an agreed recommendation. The trial court's certification was signed by the trial court, by [Artiga], and by myself on May 2, 2014. It correctly noted that [Artiga] had the right of appeal since there had been no plea bargain. I told [Artiga] that he had the right of appeal since there had been no plea bargain in his case.
> . . .
> *Moon v. State* was not decided until December 10, 2014, seven months after [Artiga's] guilty plea. I am not clairvoyant.
>
> I told [Artiga] that he had the right of appeal since there had been no plea bargain in his case. I also told him that I had some experience as appellate counsel in PSI cases and that the prospect of a successful direct

---

alleges he waived and agreed to certification was a clerical error that was timely corrected via a *nunc pro tunc*.").

[7] In *Moon v. State*, the Texas Court of Criminal Appeals held that if an order waiving juvenile jurisdiction does not contain factually supported, case-specific findings as to statutory transfer factors enumerated in the Texas Family Code, then the order is invalid. The *Moon* decision was rendered on December 10, 2014, approximately seven months after Artiga entered his guilty plea. In March 2021, the Court of Criminal Appeals explicitly overruled *Moon*, concluding that detailed fact-findings are not required to establish jurisdiction. *Ex parte Thomas*, 623 S.W.3d 370, 373 (Tex. Crim. App. 2021).

appeal from a PSI was slight. Consequently I advised
him that an appeal would be essentially futile. [Artiga]
appeared to understand what I told him. When I asked
if he wished to give notice of appeal, he did not express
any wish to appeal or have appellate counsel
appointed. Instead, he seemed to accept the sentence
as commensurate with his actions.

. . .

I advised him at the time of sentencing that for
strategic reasons in the light of *Moon v. State* an 11.07
writ would be a better option than a direct appeal.

I did not advise him that a motion for new trial was
the appropriate vehicle to raise the juvenile
certification issue. [Artiga] could not have alleged that
his plea of guilty was not knowingly made because
*Moon* had not been decided when he made it.
Furthermore, in the event that a new trial was
granted, there was no doubt that the egregiousness of
the two murders would have led the Juvenile Court to
a prompt recertification in compliance with the
requirements of *Moon*, followed by a return to the trial
court while the State's evidence was still relatively
fresh. On return to the trial court, there was no
guarantee that the State would agree to dismiss the
second murder charge. There was also the possibility
that the trial judge or a jury would sentence him to a
term greater than the 50 years he received at the PSI
hearing. Strategically, an 11.07 writ seemed the better
choice.

ECF No. 42-44 at 20–21, Amended Affidavit of Trial Counsel. The
state habeas court deemed counsel's amended affidavit credible
and found that the facts, as stated in the amended affidavit, were
true. ECF No. 42-44 at 45. These findings are entitled to a
presumption of correctness under 28 U.S.C. § 2254(e)(1), which
Artiga fails to rebut with clear and convincing evidence. *Id.*; *see
also Miller-El*, 537 U.S. at 330–31. Moreover, in denying relief, the

Texas Court of Criminal Appeals necessarily concluded that trial counsel rendered effective assistance. This conclusion is supported by the record.

The record shows that Artiga was aware of his right to appeal, that he consulted with counsel about the advantages and disadvantages of filing an appeal, and that he never expressed a desire to appeal. As discussed *supra*, the plea paperwork fully admonished Artiga that he retained the right of appeal, and the trial court certified his right to appeal. The record further shows that trial counsel consulted with Artiga about his right of appeal and whether he believed an appeal would be successful. Counsel advised Artiga as to the merits of challenging his juvenile certification and subsequent criminal conviction under *Moon* on direct appeal. Ultimately, counsel recommended filing a state habeas application instead of an appeal. After sentencing, counsel again informed Artiga about his right to file a state habeas application to challenge his certification and conviction in light of the *Moon* decision. ECF No. 42-47 at 56–57. Finally, by his own admission, Artiga never expressed to counsel a desire to appeal and, thus, he cannot show that counsel performed in a professionally unreasonable manner by failing to follow Artiga's express instructions.

In his reply, Artiga appears to argue further that counsel was deficient for failing to advise him that, under state law, challenges to a juvenile transfer proceeding could be raised *only* on direct appeal and not in a state habeas application.[8] ECF No. 44 at 2. This argument is equally unavailing because the claims Artiga

---

[8] At the time of Artiga's certification, Texas law provided that a "defendant may appeal the order of a juvenile court certifying the defendant to stand trial as an adult and transferring [him] to a criminal court 'only in conjunction with the appeal of a conviction of the offense for which the defendant was transferred to criminal court.'" *Woods v. State*, 68 S.W.3d 667, 669 (Tex. Crim. App. 2002) (en banc) (citing Tex. Code Crim. Proc. art. 44.47(b)).

contends should have been raised on direct appeal are jurisdictional ones. "Claims that a juvenile transfer order is void are cognizable on a writ of habeas corpus because they involve the jurisdiction of the trial court to hear a case." *Ex parte Thomas*, 623 S.W.3d at 375 (citing *Ex parte Drake*, 883 S.W.2d 213, 215 (Tex. Crim. App. 1994) (habeas corpus is reserved for those instances in which there is a jurisdictional defect in the trial court which renders the judgment void or for denials of fundamental or constitutional rights)). "It is axiomatic that review of jurisdictional claims or denials of fundamental constitutional rights are cognizable in post-conviction habeas corpus proceedings." *Id.* at 376 (citation omitted). "The core reason why jurisdictional issues can never be waived (at least for purposes of raising them in application for a writ of habeas corpus) is because a court that lacks subject matter jurisdiction has no authority to fix errors in a judgment or order that was entered without subject-matter jurisdiction." *Id.* (citation omitted). Under these circumstances, Artiga cannot demonstrate that counsel was deficient for failing to consult with him about taking an appeal.

Nor does Artiga demonstrate that there is a reasonable probability that, but for counsel's alleged deficiencies, he would have timely appealed. Although Artiga now contends that he would have "unequivocally" instructed counsel to file a notice of appeal, his argument fails to address the strategic reasons for not doing so. As noted by counsel, there were valid concerns as to the potential consequences of a successful appeal, including that: the State could immediately move to recertify Artiga as an adult in both the instant case as well as the dismissed case charging him with the murder of Roche; if the case returned to the trial court, there was no guarantee that the State would agree to dismiss the second murder charge; and Artiga's punishment could be significantly greater than the 50-year sentence he received.

Absent a showing of deficient performance or actual prejudice, Artia fails to demonstrate a valid claim of ineffective assistance of trial counsel. To the extent the Court of Criminal Appeals rejected his claim, Artiga does not show that this decision was unreasonable under the doubly deferential standard of review. He is not entitled to federal habeas corpus relief on his ineffective-assistance-of-counsel claim.

### 2.    Failure to call expert rebuttal witness[9]

In his remaining ground for relief, Artiga argues that trial counsel rendered ineffective assistance when he failed to present expert testimony from clinical psychologist, Gerald Harris, as mitigating evidence at sentencing. ECF No. 1 at 7. This allegation is not supported by the record.

"Claims of uncalled witnesses are disfavored, especially if the claim is unsupported by evidence indicating the witnesses's willingness to testify and the substance of the proposed testimony." *Gregory v. Thaler*, 601 F.3d 347, 352 (5th Cir. 2010) (citing *Harrison v. Quarterman*, 496 F.3d 419, 428 (5th Cir. 2007)); *see also Sayre v. Anderson*, 238 F.3d 631, 635–36 (5th Cir. 2001) (emphasizing that complaints of uncalled witnesses are not favored in federal habeas corpus review because allegations as to what a witness would have testified are mostly speculative) (citations omitted). A petitioner "must show not only that [the] testimony would have been favorable, but also that the witness would have testified at trial." *Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002) (quoting *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985)). "The decision whether to present a witness is considered to be essentially strategic, and '"speculations as to what

---

[9] The court notes that Artiga has filed a letter stating his intent to abandon this ground for relief as frivolous. ECF No. 45 at 1. Because the issue has been fully briefed, because the letter does not comply with Federal Rule of Civil Procedure 41, and because the Respondent seeks dismissal with prejudice, the court addresses this claim for relief on the merits.

[uncalled] witnesses would have testified is too uncertain.'" *Gregory*, 601 F.3d at 352–53 (quoting *Alexander*, 775 F.2d at 602).

Due to "the almost infinite variety of possible trial techniques and tactics available to counsel, [a court] is careful not to second guess legitimate strategic choices." *Yohey v. Collins*, 985 F.2d 222, 228 (5th Cir. 1993). "A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Johnson v. Dretke*, 394 F.3d 332, 337 (5th Cir. 2004) (internal quotation marks and citations omitted); *accord United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002) (citation omitted). Contrary to Artiga's allegations, the record evidence shows no basis to overcome the presumption that trial counsel's strategy and actions were reasonable.

Artiga contends that counsel should have called clinical psychologist, Gerald Harris, as an expert witness to rebut the state's argument that Artiga had no remorse and was a future danger to society. ECF No. 1 at 7. Artiga argues that if counsel had presented Harris's testimony at sentencing, there is a reasonable probability that Artiga's sentence would have been reduced. *Id.* Again, trial counsel addressed Artiga's allegations in his affidavit during the state habeas proceedings. In responding to Artiga's contentions that he failed to present mitigating evidence from Harris, counsel stated, in relevant part:

> Prior to [Artiga's] decision to plead guilty with a Pre-Sentence Investigation, psychologist Gerald Harris performed a competency evaluation of [Artiga] pursuant to the court's order. Harris found [Artiga] competent to stand trial. As is the case with most competency evaluations in response to a court order, Harris' evaluation focused on [Artiga's] ability to understand the charges against him and assist counsel

in his defense. Because of its limited scope, and because [Artiga's] ability to understand the charges was never really in doubt, the evaluation by a psychologist was not particularly helpful to the defense.

After months of conferring with [Artiga] it was clear that he was not only mentally competent, but intelligent and capable of making rational decisions about his future. I believed that a dedicated mitigation specialist would serve better than a psychologist to address any factors which would place [Artiga's] actions in a mitigating context. To that end, I retained the services of mitigation expert Cheri Schultz to prepare a memorandum in mitigation of punishment which was admitted as an exhibit at the PSI hearing. Schultz was specifically retained to serve as a defense expert and as such was available to me for consultation and input. I had employed Schultz in a previous murder case and believed that her mitigation report had been of substantial benefit to the client in that case. For those reasons, I believed that Schultz was better positioned to assist the defense than a psychologist such as Harris who had already found [Artiga] competent to stand trial.

ECF No. 42-44 at 19–20.

Again, the state habeas court deemed counsel's amended affidavit to be credible, finding that counsel "sufficiently considered the presentation of mitigation evidence" and that Artiga failed "to show that testimony from a third party relating to his remorse would have been more effective than the evidence that was presented to the court." *Id.* at 45, 52, 54. The state court's findings are entitled to a presumption of correctness. 28 U.S.C. § 2254(e)(1). Artiga fails to present, and the record fails to reveal, clear and convincing evidence to rebut the state court's findings. *Id.*; *see also Miller-El*, 537 U.S. at 330–31.

The record shows that counsel filed a motion to appoint Schultz as a mitigation expert witness. ECF No. 42-2 at 8–10. Schultz prepared a detailed "Sentencing Memorandum in Mitigation of Punishment," which was submitted as a defendant's exhibit and included in the PSI packet. ECF No. 42-6 at 6–9; ECF No. 42-9 at 8–11; ECF No. 42-10; ECF No. 42-11; ECF No. 42-12. Schultz was familiar with Artiga, having also prepared a sentencing memorandum in connection with his juvenile certification. ECF No. 42-9 at 10. Schultz met with Artiga, as well as his family members, on multiple occasions and her memorandum to the court emphasized both that Artiga accepted full responsibility for his actions and that she believed there were mitigating factors and circumstances regarding Artiga's involvement in the murders of both Hernandez and Roche. *Id.* at 9–11; ECF No. 42-10 at 1–4. Schultz's memorandum also included an apology letter from Artiga, more than a dozen character reference letters from Artiga's family members and friends, and family photos. ECF No. 42-10 at 5–12; ECF No. 42-11; ECF No. 42-12.

The record clearly shows that counsel made professional decisions concerning mitigation evidence. That Artiga may disagree with counsel's decision and trial strategy does not constitute evidence of ineffective assistance. Artiga does not present an affidavit or other sworn account from Harris showing that he would have been available to testify and that his testimony at the time of trial would have been favorable. Absent affidavits or similar evidence from the uncalled witness, Artiga's claim is speculative and conclusory. Under these circumstances, Artiga fails to demonstrate that counsel's performance fell below an objective standard of reasonableness for professional performance. Because Artiga's claim does not rise above the speculative level, he

does not demonstrate that his attorney was deficient for failing to call Harris as an expert witness.

Nor does Artiga demonstrate prejudice. The Fifth Circuit applies a modified *Strickland* approach when analyzing claims of ineffective assistance of counsel during the sentencing phase, holding that "a court must determine whether there is a reasonable probability that but for trial counsel's errors the defendant's non-capital sentence would have been *significantly* less harsh." *Spriggs v. Collins*, 993 F.2d 85, 88 (5th Cir. 1993) (emphasis in original). In determining that "significance" in this sentencing context, the "prejudice" must be rather appreciable before a new trial is warranted in view of counsel's error. *Id.* at 88, n.4. In making this determination, the court should consider four factors: (1) the actual amount of the sentence imposed on the defendant; (2) the minimum and maximum sentences possible; (3) the relative placement of the sentence actually imposed within that range; and (4) the various relevant mitigating and aggravating factors that were properly considered by the sentence. *Id.* at 88–89.

Here, Artiga was sentenced to a 50-year prison term for the offense of murder. Under the Texas Penal Code, murder is a first-degree felony with a potential sentencing range of life or for any term of not more than 99 years or less than 5 years. Tex. Penal Code §§ 12.32, 19.02. Thus, Artiga's 50-year sentence is in the middle of the sentencing range.

As summarized by defense counsel in his closing statement at punishment, Artiga's mitigating factors included that he was young and vulnerable to the influence of gang membership, that he understood that his actions were wrong and accepted full responsibility for them, and that many family members and friends provided statements as to the good aspects of his character and his desire to change. ECF No. 42-6 at 134–36. Additionally, as

noted in Shultz's mitigation memorandum, Artiga had no previous criminal history. ECF No. 42-10 at 3.

In contrast, the aggravating factors the State presented, as summarized in the State's closing statement at punishment, included the following: Artiga was a known member of the violent MS-13 gang; he had been involved in a separate homicide only one month after the murder of Hernandez; he showed no remorse early in the investigation; and his gang affiliation rendered him a future danger to the community. ECF No. 42-6 at 147–51.

In light of this record, Artiga fails to demonstrate that but for counsel's actions, his sentence would have been significantly less harsh. Absent a showing of deficient performance or actual prejudice, Artia fails to demonstrate a valid claim of ineffective assistance of trial counsel. The state court denied relief on this claim. Artiga does not show that the state court's decision was unreasonable under the doubly deferential standard of review. He is not entitled to federal habeas corpus relief on his ineffective-assistance-of-trial-counsel claim.

## IV. Conclusion and Recommendation

The court recommends that the respondent's motion for summary judgment be **GRANTED** and that Artiga's federal habeas corpus petition be **DISMISSED** with prejudice. The court further recommends that a certificate of appealability not issue.

The parties have fourteen days from service of this report and recommendation to file written objections. *See* Rule 8(b) of the Rules Governing Section 2254 Cases; 28 U.S.C. § 636(b)(1)(c); Fed. R. Civ. P. 72. Failure to timely file objections will preclude appellate review of factual findings or legal conclusions, except for

plain error. *See Thomas v. Arn*, 474 U.S. 140, 147–49 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).

Signed at Houston, Texas, on June 7, 2024.

_____

Peter Bray
United States Magistrate Judge